**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Carl E. Reichenbach,

      **Plaintiff,**

                                        **Case No. 2:03-CV-1132**
**-V-**                                      **JUDGE SMITH**
                                        **Magistrate Judge King**

City of Columbus, Ohio, *et al.*,

      **Defendants.**

**<u>OPINION AND ORDER</u>**

Plaintiff brings this action against the City of Columbus, Ohio ("City"); the Franklin County, Ohio Board of Commissioners; and Dewey R. Stokes, Mary Jo Kilroy, and Arlene Shoemaker, in their official capacities as Franklin County Commissioners ("County Defendants"). Plaintiff asserts three claims: (1) disability discrimination under Title II of the Americans with Disabilities Act; 42 U.S.C. § 12101, *et seq.*; (2) common law negligence; and (3) violations of his federal rights under 42 U.S.C. § 1983. Plaintiff moves for partial summary judgment against the County Defendants as to Defendants' liability under the ADA and further seeks an award of attorneys' fees (Doc. 77). The County Defendants move for partial summary as to the ADA and the § 1983 claims (Doc. 96). Plaintiff filed a Second Motion for Extension of Time To Further Respond to the County Defendants' Motion for Summary Judgment. (Doc. 97). The County Defendants filed a Motion for Extension of Time to Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 99). For the reasons that follow, the Court **DENIES** the Plaintiff's Motion for Summary Judgment, **DENIES** Plaintiff's Second Motion for Extension of

Time To Further Respond to the County Defendants' Motion for Summary Judgment, **GRANTS** the County Defendants' Motion for Summary Judgment, and **DENIES** the County Defendants' Motion for Extension of Time to Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment.

## I.  FACTS

Plaintiff is an individual citizen of the State of Ohio.  He utilizes a wheelchair as a result of prior injuries.  On December 9, 2002, Plaintiff made his way to the Franklin County Department of Jobs and Family Services ( "Family Services").  On his way to Family Services, Plaintiff attempted to push his wheelchair down a wheelchair ramp located at 52 East Fulton Street, Columbus, Ohio.  The ramp services a surface parking lot for Franklin County employees and is adjacent to Family Services. Plaintiff alleges that his wheelchair became stuck in a hole in the wheelchair ramp and that he fell attempting to dislodge it.  Plaintiff alleges that he suffered injuries as a result of the fall.  After the fall, Plaintiff pushed himself back into the wheelchair and continued to Family Services.

The sidewalks and ramps along the north side of Fulton Street, including the ramp at issue, were installed by Franklin County in 1979.  The City of Columbus has no record of any alterations to the curb ramps or sidewalks at the public facility site in question.  The City also has no record of calls or complaints about the defective ramp.

## II.  SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to
judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).[1] The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. Id. Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. Id.

The Sixth Circuit Court of Appeals has recognized that Liberty Lobby, Celotex, and

---

[1] Reeves involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, Reeves, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. In re Morris, 260 F.3d 654, 665 (6th Cir. 2001). As such, Reeves did not announce a new standard of review for summary judgment motions.

<u>Matsushita</u> have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments.  <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1476 (6th Cir. 1989).  The court in <u>Street</u> identified a number of important principles applicable in new era summary judgment practice.  For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment.  <u>Id.</u> at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  <u>Id.</u> (quoting <u>Liberty Lobby</u>, 477 U.S. at 257).  The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion.  <u>Id.</u>  It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'"  <u>Id.</u> (quoting <u>Matsushita</u>, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  <u>Id.</u> at 1479-80.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  <u>In re Morris</u>, 260 F.3d 654, 665 (6th Cir. 2001).

## III. DISCUSSION

### A.    ADA Claims

The purpose of the ADA is to "provide a clear and comprehensive national mandate for the elimination of discrimination  against individuals with disabilities." 42 U.S.C. § 12101(b)(1) (2005).  To that end, Title II of the ADA mandates that "no qualified individual with a disability shall, by

4

reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2005). To establish a *prima facie* case under Title II of the ADA, a plaintiff must demonstrate that (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his disability. *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir.1995).

In a footnote, Defendants state that it does not concede that Plaintiff has demonstrated that he has a disability. Defendants reference a portion of Plaintiff's own deposition that Defendants claim establishes a genuine issue of material fact, but fails to further develop this argument. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 556 (6th Cir.1999); quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Regardless, the Court finds, as a matter of law, Plaintiff is a qualified individual with a disability. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual; (2) "a record of such an impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2). The EEOC has interpreted "major life activities" to include walking and breathing and "substantially limits" to mean inability to perform, or a severe restriction on the ability to perform, as compared to the average population. 29 C.F.R.§ 1630.2(i)-(j). In determining whether an individual is substantially limited in a major activity, the Court considers "(i)[t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting form the

impairment." 29 C.F.R. § 1630.2(j)(2).

Plaintiff testified in his deposition about his multiple disabilities which include difficulty walking and breathing. Further, Plaintiff was classified by the Veteran's Administration as "home bound," meaning that he was disabled to the extent that everyday activities could endanger him. The portions of Plaintiff's deposition referenced by Defendants merely reveal that Plaintiff, on a good day, if necessary, can utilize a cane to get himself short distances. It does not undermine Plaintiff's assertion that he is substantially limited in the major life activity of walking. Thus, the Court concludes that, as a matter of law, Plaintiff has a disability.

The ADA does not set forth implementing standards, but grants authority to the Attorney General to do so. Section 204, 42 U.S.C. § 12134(a). Pursuant to Section 204, the Attorney General adopted 28 C.F.R. §§ 35.149-35.151.[2] Unless the regulations are arbitrary, capricious or manifestly contrary to the statute, the agency's regulations are given controlling weight. *Chevron, U.S.A. v. National Resources Defense Council, Inc.,* 467 U.S. 837, 844 (1984). Under these regulations, there is a distinction between existing facilities, covered by Section 35.150, and new construction and alterations, covered by Section 35.151. Plaintiff maintains that Defendants violated both of these Sections.

### 1.    Section 13.150 Existing Facilities

Plaintiff first argues that the County Defendants violated Section 13.150(d)(1) which provides that "[i]n the event that structural changes to facilities will be undertaken to achieve

---

[2]The ADA's prohibition of discrimination in services, programs, or activities "encompasses virtually everything a public entity does." *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir.1998). "Services, programs or activities," as that term is contemplated by the ADA, includes sidewalks. *Id.* at 569. Consequently, the sidewalks containing the at-issue ramps are therefore subject to the program accessibility regulations, found at 28 C.F.R. §§ 35.149-35.151.

program accessibility, a public entity that employs 50 or more persons shall develop, within six months of January 26, 1992, a transition plan setting forth the steps necessary to complete such changes." Defendants respond that they did have a transition plan, attached an affidavit of Wayne King and claims that Plaintiffs have mischaracterized deposition testimony in reaching the conclusion that Defendants failed to develop a plan. The Court does not need to determine whether or not a transition plan was prepared because the Sixth Circuit, in a well-reasoned opinion, has concluded that there is not a private right of action to enforce the transition plan requirements set forth in Section 35.150(d). *Ability Center of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 914-15. Accordingly, Plaintiff does not have a private right of action against the County Defendants for any alleged failure to develop a transition plan.

2.       Section 35.151 New Construction and Alterations

Next, Plaintiff argues that various repairs and replacements undertaken by Defendants triggered a duty on a part of the County Defendants to make the at-issue ramp ADA compliant and that County Defendants' failure to do so violated Section 35.151. County Defendants argue that the ramps in question were not subject to Section 35.151 because the ramps were built in 1979 based upon the specifications required in the Rehabilitation Act and no alterations were made before Plaintiff's accident.

Section 35.151(b) provides that alterations of facilities, commenced after January 26, 1992, "by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such a manner that the altered portion of the facility is readily accessible and usable by individuals with disabilities." The regulation further specifies that alterations should meet certain accessibility standards and that altered streets and pedestrian walkways must contain curb ramps. *Id*. Facilities

7

include roads and walks. 28 C.F.R. § 35.104. Section 35.151(e)(1-2) provides that "[n]ewly constructed or altered streets, roads, and highways must contain curb ramps or other sloped areas at any intersection having curbs or other barriers to entry from a street level or pedestrian walkway" and "[n]ewly constructed or altered street level pedestrian walkways must contain curb ramps or other sloped areas at intersections or streets, roads, or highways."

Plaintiff claims that the County Defendants first violated Section 13.151 in 1996, when the County Defendants planned to do work on the sidewalks and the ramp at issue. The Plaintiff admits that no work was done pursuant to the alleged plans. Plaintiff has offered no legal authority to support his theory that planning and taking estimates alone, without actual modification, triggers a duty under 13.151.[3] Accordingly, the Court finds that the County Defendants did not violate Section 13.151 in 1996 when it planned to do work on the sidewalks and the ramp at issue.

Plaintiff next claims that Defendants again violated Section 13.151 in 2000 when County Defendants replaced sections of the sidewalk and curbs near to the ramps at issue. The County Defendants point out that Plaintiff is referring to repairs made on isolated portions of the sidewalk along Fulton Street, that the work did not modify or alter the sidewalks and that no repairs were made adjacent to the at-issue ramps. The Court concludes that these isolated repairs did not amount to a modification or alteration triggering a duty under Section 13.151.

Plaintiff further claims that Defendants once again violated Section 13.151 in 2002 when the County authorized repair and replacement of the driveway leading to the parking lot. The driveway abuts the at-issue ramp. The County Defendants note that Plaintiff refers to estimates it sought for

---

[3]Plaintiff cites to *Barden v. Sacramento*, 292 F.3d 1073 (9th Cir.2002), yet the only issue before the *Barden* court was whether or not public sidewalks constituted a "service, program, or activity" within the meaning of the ADA.

replacement of the driveway adjacent to the ramps. The Court finds that actual modification or alteration is required to trigger a duty under Section 13.151, and consequently, estimates for replacement or isolated repairs do not suffice.

Finally, Plaintiff claims that Defendants violated Section 13.151 in June, 2003 when the County repaired and repaved the driveway leading to the parking lot. The Plaintiff cites *Kinney v. Yerusalim*, 9 F.3d 1067 (3rd Cir. 1993) for support. The issue before the *Kinney* Court was whether the city was required to install curb ramps at intersections when it resurfaced city streets. *Id.* at 1069. The *Kinney* court indicated the central inquiry was whether or not resurfacing of a street constituted an alteration within the scope of the regulation. *Id.* After examining the resurfacing project at issue, and noting that it "involves more than minor repairs or maintenance" and "[a]t a minimum, it requires, the laying of a new asphalt bed spanning the length and width of a city block," and it prevents damage to vehicles, injuries to people and "generally promotes commerce and travel," the *Kinney* Court concluded that the resurfacing was so substantial that it constituted an alteration as contemplated by Section 13.151. *Id.* at 1073. County Defendants argue that a discussion as to whether repaving the driveway constituted an alteration triggering a responsibility to upgrade the ramps is irrelevant since the repaving occurred *after* Plaintiff's alleged fall. Given that the fall occurred *before* the repaving and that the ramps are currently ADA compliant,[4] the Court agrees that whether or not the repaving of the driveway constituted an alteration as contemplated by Section 13.151 is irrelevant and declines to rule on that matter.

Based upon the foregoing, the County Defendants are entitled to summary judgment in its

---

[4]Even if the Court were to conclude that the repaving constituted an alteration triggering a responsibility to upgrade the ramps, Plaintiff would only be entitled to injunctive relief because the Court finds that there is no showing of intentional discrimination.

favor on Plaintiff's ADA claims.

**B.     42 U.S.C. Section 1983 Claims**

The United States Code provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceedings for redress . . . .

42 U.S.C. § 1983.  To prevail in a Section 1983 action, a plaintiff must demonstrate two elements:

"(1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the

deprivation was caused by a person acting under color of state law." *Ellison v. Garbarino*, 48 F.3d

192, 194 (6th Cir. 1995).

In the instant case, Plaintiff proceeds under Section 1983 on the theory that the County

Defendants deprived him of rights secured by the ADA.  Thus, Plaintiff's Section 1983 claim is

entirely derivative of his ADA claim.  The Court has already determined that Plaintiff's ADA claims

against the County Defendants fail as a matter of law.  It follows, then, that Plaintiff's Section 1983

claim fails as a matter of law as well.  For this reason, the County Defendants are entitled to

summary judgment in its favor on Plaintiff's Section 1983 claim.

**C.     Attorneys' Fees**

Plaintiff seeks summary judgment on his claim for an award of attorneys' fees.  "The ADA

provides that "[i]n any action . . . commenced pursuant to this chapter, the court or agency, in its

discretion, may allow the prevailing party . . . a reasonable attorney's fee."  42 U.S.C. § 12205.

*Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005).  In order for a plaintiff to receive

attorneys' fees in a civil rights action, the plaintiff must be the prevailing party.  42 U.S.C. § 12205.

10

A plaintiff may be considered a prevailing party if the plaintiff succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.  "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties such that the defendant's behavior is modified in a way that directly benefits the plaintiff.  However, a technical victory may be so insignificant as to be insufficient to support prevailing party status."  Id. at 569. (Internal quotations omitted).

Plaintiff admits that, at the least, a consent decree must result from the litigation and that the plaintiff must have some minimum basis in the law for the relief secured.  The Court has determined that all of Plaintiff's ADA claims against the County Defendants fail as a matter of law.  Accordingly, Plaintiff's request for attorneys' fees is denied.

**D.      State Law Negligence Claims**

Defendants have also moved for summary judgment on the Plaintiff's state law negligence claims.  Having determined that Plaintiff's federal claims must be dismissed, however, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1996).

**E.      Pending Motions for Extensions of Time**

Plaintiff filed a Second Motion for Extension of Time To Further Respond to the County Defendants' Motion for Summary Judgment (Doc. 97).  By this Motion, Plaintiff seeks an order reopening discovery and allowing Plaintiff an additional 20 days to supplement his Memorandum in Opposition to Defendants' Motion for Summary Judgment after the close of discovery.  The County Defendants filed a Motion for Extension of Time to Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 99)**.**  By this Motion, Defendants seek an extension of time to file its Reply to Plaintiff's Memorandum in Opposition for a period of

11

ten days after the ruling on Plaintiff's motion for an extension.

Plaintiff claims he needs "considerable additional time to respond" because Defendants, in its Summary Judgment Motion, "raised entirely new matters" and specifically references what Plaintiff has labeled the "newly discovered" transition plan. Plaintiff further asserts that Defendants' Summary Judgment Motion relies heavily upon the transition plan. Defendants respond that the transition plan was not an "entirely new matter," was first raised by Plaintiff in his Motion for Summary Judgment, and Defendants responded to Plaintiff's allegations, attaching an affidavit of Wayne King. Plaintiff moved the Court to strike the affidavit; the Court denied Plaintiff's motion (Doc. 89). Defendant further points out that Plaintiff failed to specifically inquire about a transition plan in written discovery, nor did he ask Wayne King in deposition about the existence of a transition plan. While the Court finds that Plaintiff's characterization of the transition plan and Defendant's reliance upon it to be inaccurate, the Court finds that finds that Plaintiff's Motion for an Extension of Time should be denied on other grounds.

As set forth in the foregoing paragraphs, Plaintiff seeks to hold Defendants liable for failing to develop a transition plan in violation of 28 C.F.R. § 35.150(d). Defendants, in its Memorandum in Opposition and in its own Motion for Summary Judgment claims that it did, in fact, develop a transition plan and attached an affidavit of Wayne King. Defendant further claims that Plaintiff has mischaractarized testimony in reaching the conclusion that Defendants failed to develop a plan. As set forth above, Defendants are entitled to summary judgment in its favor on this claim regardless of whether or not a transition plan was prepared. *See Ability Center of Greater Toledo*, 385 F.3d at 914-15. Thus, while further discovery may uncover details about the transition plan produced by Defendants, it will not change the outcome of this case. Consequently, Plaintiff's Second Motion for Extension of Time To Further Respond to the County Defendants' Motion for Summary

Judgment is Denied.  The County Defendants' Motion for Extension of Time to Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment is denied; it is not necessary for Defendants to file a Reply.

## V.  CONCLUSION

Based on the above, the Court **DENIES** Plaintiff's Motion for Summary Judgment (Doc. 77), **DENIES** Plaintiff's Second Motion for Extension of Time To Further Respond to the County Defendants' Motion for Summary Judgment (Doc. 97), **GRANTS** the County Defendants' Motion for Summary Judgment (Doc. 96) and **DENIES** the County Defendants' Motion for Extension of Time to Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. 99).

The Clerk shall enter a final judgment in this case, dismissing Plaintiff's federal claims with prejudice and his state law claims without prejudice.

The Clerk shall remove Documents 77, 96, 97 and 99 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases.

**IT IS SO ORDERED.**


  s/ George C. Smith
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**

13